# EXHIBIT A



Tue Jan 13 2026

| | |
|---|---|
| Entity#: | 4982763 |
| Filing Type: | CORPORATION FOR PROFIT |
| Original Filing Date: | 01/13/2023 |
| Location: | AKRON- |
| Business Name: | VAL'S CRANE & EQUIPMENT CO. |
| Status: | Active |
| Exp. Date: | - |

## Agent/Registrant Information

VALERIE R. PORTER
1053 KEVIN DR.
AKRON OH 44313
01/13/2023
Active

## Filings

| Filing Type | Date of Filing | Document ID |
|---|---|---|
| DOMESTIC ARTICLES/FOR PROFIT | 01/13/2023 | 202301200494 |

**UNITED STATES OF AMERICA
STATE OF OHIO
OFFICE OF SECRETARY OF STATE**

I, Frank LaRose, Secretary of State of the State of Ohio, do hereby certify that this is a list of all records approved on this business entity and in the custody of the Secretary of State.



*Witness my hand and the seal of the Secretary of State at Columbus, Ohio this 13th of January, A.D. 2026*

*Ohio Secretary of State*



| DATE | DOCUMENT ID | DESCRIPTION | FILING | EXPED | CERT | COPY |
|---|---|---|---|---|---|---|
| 01/17/2023 | 202301200494 | DOMESTIC FOR PROFIT CORP - ARTICLES (ARF) | 100.00 | 0.00 | 0.00 | 0.00 |

## Receipt
This is not a bill. Please do not remit payment.

F LEES TAX ACCOUNTING SERVICES INC
875 E MARKET ST
AKRON, OH 44305-2442

# STATE OF OHIO
## CERTIFICATE

### Ohio Secretary of State, Frank LaRose
#### 4982763

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**VAL'S CRANE & EQUIPMENT CO.**

and, that said business records show the filing and recording of:

| Document(s) | Document No(s): |
|---|---|
| **DOMESTIC FOR PROFIT CORP - ARTICLES** | 202301200494 |

Effective Date: 01/13/2023



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of the Secretary of State at Columbus, Ohio this 17th day of January, A.D. 2023.

**Ohio Secretary of State**

Form 532A Prescribed by:



Date Electronically Filed: 1/13/2023

Toll Free: 877.767.3453 | Central Ohio: 614.466.3910

OhioSoS.gov | business@OhioSoS.gov

File online or for more information: OhioBusinessCentral.gov

# Initial Articles of Incorporation
## (For Profit, Domestic Corporation)
## Filing Fee: $99
## (113 - ARF)
## Form Must Be Typed

**First:** Name of Corporation: VAL'S CRANE & EQUIPMENT CO.

(Name must include the following word or abbreviation: company, co., corporation, corp., incorporated, or inc.)

**Second:** Location of Principal Office in Ohio

City: AKRON
State: OHIO
County: SUMMIT

**Optional:** Effective Date (MM/DD/YYYY): 1/13/2023

(The legal existence of the corporation begins upon the filing of the articles or on a later date specified that is not more than ninety days after filing.)

**Third:** The number of shares which the corporation is authorized to have outstanding.
(Please state if shares are common or preferred and their par value, if any.)

Number of Shares: 1000
Type of Shares: COMMON
Par Value of Shares: 0

**Fourth:** If the corporation is to have an initial stated capital, please state the amount of that stated capital.

Amount: 0

**Optional:** Purpose: ANY AND ALL LEGAL BUSINESS ACTIVITIES THAT A COPORATION MAY PERFORM IN THE STATE OF OHIO.

** Note: ORC Chapter 1701 allows additional provisions to be included in the Articles of Incorporation that are filed with this office. If including any of these additional provisions, please do so by including them in an attachment to this form. **

## Original Appointment of Statutory Agent

The undersigned, being at least a majority of the incorporators of

| VAL'S CRANE & EQUIPMENT CO. |

(Name of Corporation)

hereby appoint the following to be Statutory Agent upon whom any process, notice or demand required or permitted by statute to be served upon the corporation may be served. The complete address of the agent is:

| VALERIE R. PORTER |

(Name of Statutory Agent)

| 1053 KEVIN DR. |

(Mailing Address)

| AKRON | | OH | | 44313 |

(Mailing City) (Mailing State) (Mailing ZIP Code)

Must be signed by the incorporators or a majority of the incorporators.

| VALERIE R. PORTER |

(Signature)

| RODNEY D. PORTER |

(Signature)

| |

(Signature)

## Acceptance of Appointment

The Undersigned, | VALERIE R. PORTER | , named herein as the

(Name of Statutory Agent)

Statutory agent for | VAL'S CRANE & EQUIPMENT CO. |

(Name of Corporation)

hereby acknowledges and accepts the appointment of statutory agent for said corporation.

Statutory Agent Signature | VALERIE R. PORTER |

(Individual Agent's Signature / Signature on Behalf of Business Serving as Agent)

**By signing and submitting this form to the Ohio Secretary of State, the undersigned hereby certifies that he or she has the requisite authority to execute this document.**

**Required**

Articles and original appointment of agent must be signed by the incorporator(s).

If the incorporator is an individual, then they must sign in the "signature" box and print his/her name in the "Print Name" box.

If the incorporator is a business entity, not an individual, then please print the entity name in the "signature" box, an authorized representative of the business entity must sign in the "By" box and print his/her name and title/authority in the "Print Name" box.

| VALERIE R. PORTER |
Signature

| VICE PRESIDENT |
By (if applicable)

| |
Print Name

| RODNEY D. PORTER |
Signature

| PRESIDENT |
By (if applicable)

| |
Print Name

| |
Signature

| |
By (if applicable)

| |
Print Name

Form 532A     Page 3 of 3     Last Revised: 03/24/2021

# EXHIBIT B

## MEMORANDUM OF AGREEMENT
### Michiana Independent Building Group



49512 KB

THIS AGREEMENT made and entered into by and between __Vals Crane & Equipment Co.__
__1053 Kevin Dr. Akron OH 44313_____, its successors and assigns, hereinafter referred to as the "EMPLOYER," and LOCAL 150, INTERNATIONAL UNION OF OPERATING ENGINEERS, hereinafter referred to as the "UNION" (collectively, "the Parties"), in consideration of the promises exchanged do hereby agree as follows:

1. The EMPLOYER recognizes the UNION as the sole and exclusive bargaining representative for and on behalf of the employees of the EMPLOYER within the territorial and occupational jurisdiction of the UNION. Prior to recognition under Section 9(a) of the National Labor Relations Act, the UNION requested recognition as the Section 9(a) majority representative and offered to the EMPLOYER valid written evidence of the UNION'S exclusive designation as bargaining representative by the majority of the employees of EMPLOYER covered by the Agreement. Based on the UNION'S offer, the EMPLOYER granted the Union recognition under Section 9(a) of the Act.

2. The Parties do hereby adopt the Master Agreement commonly referenced as the Michiana Independent Building Agreement entered into by and between the UNION and the MICHIANA INDEPENDENT BUILDING GROUP ("the Group"). The Parties do hereby mutually agree to be bound by the terms and conditions of that Master Agreement and the Agreement and Declaration of Trusts referenced therein, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein. The EMPLOYER acknowledges that he/she has received a copy of the aforesaid Master Agreement, that he/she has reviewed same, and that he/she is aware of the obligations arising thereunder.

3. This Agreement and the adoption of the Master Agreement and the Agreements and Declarations of Trust referenced in Paragraph 2 above shall be effective as of the date of execution below, and remain in effect up to and including the expiration date of the Master Agreement adopted herein. This Agreement shall continue in effect from year to year thereafter and specifically adopt any successor agreement to the Master Agreement entered between the UNION and the Group subsequent to the expiration date of the Master Agreement herein adopted unless notice of termination or amendment is given in the manner provided herein.

4. Either Party desiring to amend or terminate this Memorandum of Agreement must notify the other in writing at least three (3) calendar months, but not more than four (4) calendar months, prior to the expiration of the Master Agreement adopted herein.

IN WITNESS WHEREOF, the Parties have executed this Memorandum of Agreement by their duly authorized officers and/or agents the __22nd__ day of __October_____, 20__24__ If an electronic signature is used to execute this Agreement, the signer intends that signature to authenticate this record and/or have the same effect as an ordinary non-electronic signature, including proof of willingness by the signatories to bind the Party each signatory represents. The Parties agree to apply the Illinois Electronic Commerce Security Act to this document even if the Parties do not reside or do business in Illinois or are otherwise not subject to the law.

| Vals Crane & Equipment Co. | LOCAL 150, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL-CIO |
|---|---|
| Employer | |
| By: Rodney Porter/ _(signature)_ | By: _(signature)_ |
| President | President-Business Manager James M. Sweeney |
| Title | |
| By: | By: _(signature)_ |
| | Recording-Corresponding Secretary Michael R Kresge |
| Title | By: _(signature)_ |
| cc: Employer | Business Representative James P Gardner |
| Phone: 330-836-7935 | |
| E-Mail: valscrane@yahoo.com | |
| Fax: | |


CORRESPONDING RECEIVED DEC 31 2024 SECRETARY

# EXHIBIT C

# COLLECTIVE BARGAINING AGREEMENT

by and between

# INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL UNION 150 AFL-CIO

and

# MICHIANA INDEPENDENT BUILDING AGREEMENT

**Effective**
# June 1, 2025
**Through**
# May 31, 2028

At the end of the fourth year, apprentices shall become Journeyman Engineers and shall be paid pursuant to the terms of the wage classifications set forth in this Agreement.

In no event shall the rate of pay for apprentices exceed that rate provided for in the classification of machine the apprentice may be operating as contained in Article VI of this Agreement.

Apprentices shall be paid according to the Apprenticeship Introduction Slip issued to the Employer and the Apprentice at the time the apprentice is dispatched by the Union to the Employer.

The Introduction Slip must indicate the progress status of the apprentice. As the apprentice progresses in status, he shall be paid pursuant to the rates set forth in this Agreement.

In addition to the above provisions for rates of pay, fringe benefit contributions shall be as provided for in this Agreement covering work being performed by said apprentices.

**ARTICLE VII**
**Section 1 – WELFARE FUND AND RETIREE MEDICAL SAVINGS**
**(A)       Welfare Fund**

Effective June 1, 2025, the Employer shall pay seventeen dollars and seventy cents ($17.70) per hour for each hour for which the Employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2026, the Employer shall pay eighteen dollars and thirty-five cents ($18.35) per hour for each hour for which the Employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2027, the Employer shall pay nineteen dollars and five cents ($19.05) per hour for each hour for which the Employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Contributions to the aforesaid Health and Welfare Fund shall not constitute or be deemed wages due to the employee.

It is understood and agreed that the Employer shall be bound to the terms and provisions of the Agreement and Declaration of Trust of the Midwest Operating Engineers Welfare Fund, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein.

The Welfare Fund maintains a place of business at 6150 Joliet Road, Countryside, Illinois, 60525, or at such other place designated by the Trustees. Contributions of the Employer shall be forwarded to such business office together with report forms supplied for such purpose on the tenth (10th) day of the following month no later than the twentieth (20th) day of the month. Contributions to the aforesaid Health and Welfare Fund shall not constitute or be deemed wages due to the employee.

If payment for contributions as defined above is not received by the Fund Office by the twentieth (20th) day of the month, the Employer shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreement and shall be liable for contributions due, liquidated damages, interest, and any other cost of collection; including, but not limited to, attorney fees.

The parties recognize that individuals employed by corporations who are party to this Agreement may perform both bargaining unit and non-bargaining unit work. Certain of these employees receive compensation in such a manner that it is difficult to determine for purposes of fringe benefit contributions the precise number of hours which are spent performing bargaining unit work. It is therefore agreed that when an employee who is employed by a corporation, performs both bargaining unit work and non-bargaining unit work and who:

A. Is a shareholder, officer and/or director of the corporation; or Employer;
B. Is a relative (husband, wife, father, mother, son, daughter, brother, sister, father-in-law, mother-in-law) of a shareholder, officer and/or director of the corporation or Employer

the Employer shall be required to make contributions on behalf of such employee on the basis of 120 hours, twelve (12) months a year, based on the contribution rates established herein. Failure by the Employer to make timely payments shall result in such person(s) not being eligible for benefits; such benefits shall be reinstated upon payment being made. However, such suspension of benefits shall not relieve the Employer of its obligations under this Section.

It is agreed that the 120 hour clause of this section should not apply to an LLC unless such person has a percentage of ownership of greater than 15%.

With respect to this Fund, the Employer shall report and pay at the hourly rate for each owner/operator and relative one hundred twenty (120) hours per month, twelve (12) months a year, irrespective of the amount of work they perform or the amount of compensation they receive in any individual month. The Employer may elect to report on the basis of actual hours worked per month provided the hours reported are in excess of one hundred twenty (120) hours each month.

With respect to the Midwest Operating Engineers Health and Welfare Fund, pay the required monthly contribution amount (also known as a "premium") associated with the benefit plan for each such employee. The premium amount is set by the Welfare Fund Trustees.

**(B)   RETIREE MEDICAL SAVINGS**
*All language as written in Section 1, Paragraph B of this Article shall apply to Section 1, Paragraph B*

Effective June 1, 2025, the Employer shall pay four dollars and twenty-five cents ($4.25) per hour for each hour for which the Employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund's Retiree Medical Savings Plan.

Effective June 1, 2026, the Employer shall pay four dollars and fifty cents ($4.50) per hour for each hour for which the Employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund's Retiree Medical Savings Plan.

Effective June 1, 2027, the Employer shall pay four dollars and seventy-five cents ($4.75) per hour for each hour for which the Employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund's Retiree Medical Savings Plan.

**Section 2 - Pension Fund**
It is understood and agreed that there shall be continued a Trusteed Pension Plan known as the Midwest Operating Engineers Pension Fund.

Effective June 1, 2025, the Employer shall be liable to contribute twelve dollars and seventy-five cents ($12.75) per hour for which the Employee receives wages under the terms of this Agreement to the aforementioned Pension Trust Fund.

Effective June 1, 2026, the Employer shall be liable to contribute thirteen dollars and zero cents ($13.00) per hour for which the Employee receives wages under the terms of this Agreement to the aforementioned Pension Trust Fund.

Effective June 1, 2027, the Employer shall be liable to contribute thirteen dollars and twenty-five cents ($13.25) per hour for which the Employee receives wages under the terms of this Agreement to the aforementioned Pension Trust Fund.

For apprentices see schedule in Article VI, Section 2.

The Pension Fund has been established and shall be administered in accordance with the Labor Management Relations Act of 1947, as amended.

Contributions to the Pension Trust Fund shall not constitute or be deemed wages due to the employee.

It is understood and agreed that the Employer shall be bound by the terms of provisions of the Agreement and Declaration of Trust of the Midwest Operating Engineers Pension Fund, and all amendments heretofore or hereafter made thereto as though the same were full incorporated herein.

The Pension Fund maintains a place of business at 6150 Joliet Road, Countryside, Illinois, 60525, or at such other place designated by the Trustees. Contributions of the Employer shall be forwarded to such business office together with report forms supplied for such purpose on the tenth (10th) day of the following month no later than the twentieth (20th) day of the month. Contributions to the aforesaid Fund shall not constitute or be deemed wages due to the employee.

If payment for contributions as defined above is not received by the Fund Office by the twentieth (20th) day of the month, the Employer shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreement and shall be liable for contributions due, liquidated damages, interest and any other cost of collection; including, but not limited to, attorney fees.

The parties recognize that individuals employed by corporations who are party to this Agreement may perform both bargaining unit and non-bargaining unit work. Certain of these employees receive compensation in such a manner that it is difficult to determine for purposes of fringe benefit contributions the precise number of hours which are spent performing bargaining unit work. It is therefore agreed that when an employee who is employed by a corporation, performs both bargaining unit work and non-bargaining unit work and who:

A.   Is a shareholder, officer and/or director of the corporation or Employer
B.   Is a relative (husband, wife, father, mother, son, daughter, brother, sister, father-in-law, mother-in-law) of a shareholder, officer and/or director of the corporation or Employer

The Employer shall be required to make contributions on behalf of such employee on the basis of 120 hours, twelve (12) months a year, based on the contribution rates established herein.

It is agreed that the 120 hour clause of this section should not apply to an LLC unless such person has a percentage of ownership of greater than 15%.

With respect to this Fund, the Employer shall report and pay at the hourly rate for each owner/operator and relative one hundred twenty (120) hours per month, twelve (12) months a year, irrespective of the amount of work they perform or the amount of compensation they receive in any individual month. The Employer may elect to report on the basis of actual hours worked per month provided the hours reported are in excess of one hundred twenty (120) hours each month.

**Section 3 - Vacation Fund**
Effective June 1, 2025, the Employer shall pay One Dollar and Twenty Cents ($1.20) per hour for each hour wages are received by an Employee covered by this Agreement into the Local 150 IUOE Vacation Savings Plan.

In computing the Vacation Pay per hour, the Employer is required to add the amount per hour to the employee's gross wages and then deduct the Social Security and Withholding Tax from the gross figure on each check. The Vacation Pay for each hour shall then be set aside for remittance to the Vacation Savings Plan.

For apprentices see schedule in Article VI, Section 2.

Each Employer bound hereby irrevocably appoints as his representative on the Board of Trustees such Trustees as are named in the Agreement and Declaration of Trust as Employer Trustees and their successors duly appointed as therein set forth, and agrees to be bound by all the terms and provisions of the Agreement and Declaration of Trust, Local 150 I.U.O.E. Vacation Savings Plan, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein.

Payments accompanied by monthly reports on forms provided for same are due in the Vacation Savings Plan Office, 6150 Joliet Road, Countryside, Illinois 60525, not later than the tenth (10th) day of the following month for the preceding month. Report forms are available at the above address. However, if payment is not in by the twentieth (20th) day of the month, it shall be considered a violation of this Agreement and shall be liable for contributions due, liquidated damages, interest, and any other cost of collection; including, but not limited to, attorney fees.

Additional information and Employer code numbers can be obtained in the Vacation Savings Office at 6150 Joliet Road, Countryside, Illinois 60525.

**Section 4 – Retirement Enhancement Fund**
It is understood that a trusteed defined contribution known as the Midwest Operating Engineers Retirement Enhancement Fund has been established by the Union and Employer Association party to this Agreement.

Effective June 1, 2025, the Employer shall contribute one dollar and seventy-five cents ($1.75) per hour for each hour for which the Employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Retirement Enhancement Fund.

Effective June 1, 2026, the Employer shall contribute two dollars and zero cents ($2.00) per hour for each hour for which the Employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Retirement Enhancement Fund.

Effective June 1, 2027, the Employer shall contribute two dollars and twenty-five cents ($2.25) per hour for each hour for which the Employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Retirement Enhancement Fund.

The Retirement Enhancement Fund has been established and shall be administered in accordance with the Labor Management Relations Act of 1947, as amended, and the Employee Retirement Income Security Act of 1974, as amended.

Payments accompanied by monthly reports on forms provided for same are due in the Administration Office, 6150 Joliet Road, Countryside, Illinois 60525, or such other place as designated by the Trustees, on the tenth (10th) day of the following month no later than the twentieth (20th) day of the month.

If payment for contributions as defined above is not received by the Fund Office, the Employer shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreement and shall be liable for contributions due, liquidated damages, interest, and any other cost of collection.

Contributions to the Retirement Enhancement Fund shall not constitute or be deemed wages due to the employee.

It is understood and agreed that the Employer shall be bound by the terms and provisions of the Agreement and Declaration of Trust of the Midwest Operating Engineers Retirement Enhancement Fund, and all amendments theretofore or hereafter made thereto, as though same were fully incorporated herein.

The parties recognize that individuals employed by corporations/Employers who are party to this Agreement may perform both bargaining unit and non-bargaining unit work. Certain of these employees receive compensation in such a manner that it is difficult to determine for purposes of fringe benefit contributions the precise number of hours which are spent performing bargaining unit work. It is therefore agreed that when an employee who is employed by a

corporation/Employer, performs both bargaining unit work and/or non-bargaining unit work and who:

- A. Is a shareholder, officer and/or director of the corporation/Employer, or
- B. Is a 15% or greater owner of an LLC or the equivalent thereto; or
- C. Is a relative (father, mother, son, daughter, brother, sister) of a shareholder, officer and/or director of the corporation/Employer

The Employer shall be required to make contributions on behalf of such employee on the basis of one hundred twenty (120) hours, twelve (12) months a year based on the contribution rates established herein.

It is agreed that the 120 hour clause of this section should not apply to an LLC unless such person has a percentage of ownership of greater than 15%.

With respect to this Fund, the Employer shall report and pay at the hourly rate for each owner/operator and relative one hundred twenty (120) hours per month, twelve (12) months a year, irrespective of the amount of work they perform or the amount of compensation they receive in any individual month. The Employer may elect to report on the basis of actual hours worked per month provided the hours reported are in excess of one hundred twenty (120) hours each month.

**Section 5 - Apprenticeship and Skill Improvement Fund**

A Trusteed Apprenticeship and Skill Improvement Fund has been created and is known as the Operating Engineers Local 150 Apprenticeship Fund.

Effective June 1, 2025, the Employer shall pay one dollar and zero cents ($1.00) per hour for each hour wages are received by the Employees covered by this Agreement into the aforesaid Apprenticeship Fund.

Effective June 1, 2026, the Employer shall pay one dollar and five cents ($1.05) per hour for each hour wages are received by the Employees covered by this Agreement into the aforesaid Apprenticeship Fund.

Effective June 1, 2027, the Employer shall pay one dollar and five cents ($1.05) per hour for each hour wages are received by the Employees covered by this Agreement into the aforesaid Apprenticeship Fund.

It is understood and agreed that the Employer shall be bound by the terms and provisions of the Agreement and Declaration of Trust of the Apprenticeship Fund, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein.

The Employer further agrees to be bound by the terms of the Apprenticeship Standards established by Joint Apprenticeship Training Committee of the Northern Illinois and Northern Indiana Apprenticeship and Skill Improvement Program, as approved by the United States Department of Labor, Bureau of Apprenticeship Training.

The Apprenticeship Fund has been established and shall be administered in accordance with the Labor Management Relations Act of 1947, as amended and all other applicable Federal and State Laws.

The Apprenticeship and Skill Improvement Fund maintains a place of business at 6150 Joliet Road, Countryside, Illinois, 60525, or at such other place designated by the Trustees. Contributions of the Employer shall be forwarded to such business office together with report forms supplied for such purpose on the tenth (10th) day of the following month no later than the twentieth (20th) day of the month. Contributions to the aforesaid Fund shall not constitute or be deemed wages due to the employee.

Contributions to the aforesaid Apprenticeship Fund shall not constitute or be deemed wages due to the employee.

The sole liability of the Employer to the Apprenticeship Fund shall be the payment of hourly contributions as set forth in this Section; provided, however, that nothing herein shall be interpreted to release the Employer from its obligations under the Apprenticeship Standards as set forth above.

If payment for contributions as defined above is not received by the Fund Office by the twentieth (20th) day of the month, the Employer shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreement and shall be liable for contributions due, liquidated damages, interest, and any other cost of collection; including, but not limited to, attorney fees.

The parties recognize that individuals employed by corporations who are party to this Agreement may perform both bargaining unit and non-bargaining unit work. Certain of these employees receive compensation in such a manner that it is difficult to determine for purposes of fringe benefit contributions the precise number of hours which are spent performing bargaining unit work. It is therefore agreed that when an employee who is employed by a corporation, performs both bargaining unit work and non-bargaining unit work and who:

A. Is a shareholder, officer and/or director of the corporation or Employer;
B. Is a relative (husband, wife, father, mother, son, daughter, brother, sister, father-in-law, mother-in-law) of a shareholder, officer and/or director of the corporation or Employer

the Employer shall be required to make contributions on behalf of such employee on the basis of 120 hours, twelve (12) months a year, based on the contribution rates established herein.

It is agreed that the 120 hour clause of this section should not apply to an LLC unless such person has a percentage of ownership of greater than 15%.

With respect to this Fund, the Employer shall report and pay at the hourly rate for each owner/operator and relative one hundred twenty (120) hours per month, twelve (12) months a year, irrespective of the amount of work they perform or the amount of compensation they receive in any individual month. The Employer may elect to report on the basis of actual hours worked per month provided the hours reported are in excess of one hundred twenty (120) hours each month.

## Section 6 - Employee Check-Off
**(A) Dues Check Off**

Upon receipt of a written check-off authorization from an employee, the Employer agrees to deduct each week the applicable initiation fees and monthly dues uniformly required for obtaining and maintaining membership in the Union from the pay of each employee covered by this Agreement and shall remit the same to the Union, together with an itemized statement of such deductions. No deductions shall be made which are prohibited by applicable law. Payments accompanied by monthly reports on forms provided shall be submitted to the address below.

IUOE Local 150 Administrative Dues maintains a place of business at 6200 Joliet Road, Countryside, Illinois, 60525, or at such other place designated by the Trustees. Contributions of the Employer shall be forwarded to such business office together with report forms supplied for such purpose on the tenth (10th) day of the following month no later than the twentieth (20th) day of the month. Contributions to the aforesaid Fund shall not constitute or be deemed wages due to the employee.

However, if payment is not received by the twentieth (20th) day of the month, it shall be considered a violation of this Agreement and the Union shall be permitted all legal and economic remedies including the right to strike and picket until such failure to pay dues deducted, plus liquidated damages of ten (10%) percent thereon, interest and other costs, including, but not limited to, attorney fees.

It is the intention of the parties that such deductions shall comply with the requirements of the Section 302(c)(4) of the Labor--Management Relations Act of 1947, as amended, and that such deductions shall be made only pursuant to written assignments from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one (1) year, or beyond the termination date of this Agreement, whichever occurs sooner.

The Union agrees that it will indemnify and hold harmless the Employer from any and all claims, suits, causes of action, or otherwise, as regards the creation and administration of the dues deduction established by this Section.

**(B)     Local 150 – Federal PAC Check-Off**

The EMPLOYER will deduct five cents ($0.05) for each hour that the employee receives wages under the terms of this Agreement, on the basis of individually signed, voluntary authorized deduction forms and shall pay over the amount so deducted to the International Union of Operating Engineers Local 150 Political Action Committee ("IUOE PAC"), 6200 Joliet Road, Countryside, Illinois 60525.  It is agreed that these authorized deductions for the IUOE PAC are not conditions of membership in the International Union of Operating Engineers, Local 150, or of employment with EMPLOYER and that the IUOE PAC will use such monies in making political contributions in connection with Federal elections.  Payments to the IUOE PAC, accompanied by monthly reports on forms so provided by the International Union of Operating Engineers, Local 150, shall be remitted at the same time as required for the monthly pension and welfare payments on a separate check made payable to the IUOE PAC at the above address.

However, if payment is not received by the twentieth (20th) day of the month, it shall be considered a violation of this Agreement and the Union shall be permitted all legal and economic remedies including the right to strike and picket until such failure to pay Federal PAC deducted, plus liquidated damages of ten (10%) percent thereon, interest and other costs, including, but not limited to, attorney fees.

The Union agrees to indemnify and hold harmless the Employer, from any claim, suit, cause of action, or otherwise with regard to creation of this Dues Deduction, its administration or any act or action in connection therewith and such indemnity and agreement to hold harmless shall include the payment of costs and attorneys' fees on behalf of the beneficiaries of such indemnity.

The Employer and the Union agree to bear their own respective costs incurred in administering the payroll deductions to the IUOE PAC.

**Section 7 - Construction Industry Research and Service Trust Fund**

Effective June 1, 2025, the Employer shall pay fifty-five cents ($0.55) per hour for each hour for which Employees receive wages under the terms of this Agreement into the Construction Industry Research and Service Trust Fund.

Effective June 1, 2026, the Employer shall pay fifty-five cents ($0.55) per hour for each hour for which Employees receive wages under the terms of this Agreement into the Construction Industry Research and Service Trust Fund.

Effective June 1, 2027, the Employer shall pay sixty cents ($0.60) per hour for each hour for which Employees receive wages under the terms of this Agreement into the Construction Industry Research and Service Trust Fund.

It is understood and agreed that the Employer shall be bound by the terms and provisions of the Agreement and Declaration of Trust of the construction Industry Research and Service Trust Fund, and all amendments heretofore or hereafter thereto, as though the same were fully incorporated herein.

The Construction Industry Research and Service Trust Fund maintains a place of business at 6150 Joliet Road, Countryside, Illinois 60525 or at such other places designated by the Trustees.  Contributions of the Employer shall be forwarded to such business office together with report forms supplied for such purpose on the tenth (10th) day of the following month no later than the twentieth (20th).  Contributions to the aforesaid Fund shall not constitute or be deemed wages due to the Employee.

If payment for contributions as defined above is not received by the Fund Office by the twentieth (20th) day of the month, the employer shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreement and shall be liable for contributions due, liquidated damages, interest and any other costs of collection; including, but not limited to, attorney fees.

The parties recognize that individuals employed by corporations who are party to this Agreement may perform both bargaining unit and non-bargaining unit work.  Certain of these employees receive compensation in such a manner that it is difficult to determine for purposes of fringe benefit contributions the precise number of hours

which are spent performing bargaining unit work. It is therefore agreed that when an employee who is employed by a corporation, performs both bargaining unit work and non-bargaining unit work and who:

A. Is a shareholder, officer and/or director of the corporation or Employer;
B. Is a relative (husband, wife, father, mother, son, daughter, brother, sister, father-in-law, mother-in-law) of a shareholder, officer and/or director of the corporation or Employer

the Employer shall be required to make contributions on behalf of such employee on the basis of 120 hours, twelve (12) months a year, based on the contribution rates established herein.

It is agreed that the 120 hour clause of this section should not apply to an LLC unless such person has a percentage of ownership of greater than 15%.

With respect to this Fund, the Employer shall report and pay at the hourly rate for each owner/operator and relative one hundred twenty (120) hours per month, twelve (12) months a year, irrespective of the amount of work they perform or the amount of compensation they receive in any individual month. The Employer may elect to report on the basis of actual hours worked per month provided the hours reported are in excess of one hundred twenty (120) hours each month.

## ARTICLE VIII

**Section 1 - Grievance and Arbitration**

For the purpose of this Agreement, the term "Grievance" is any claim or dispute involving an interpretation or application of the Agreement by an employee, or an Employer, or the Union, or the Contractor Group that one or the other of the aforesaid persons or organizations is violating or has violated this Agreement.

All grievances shall be filed under the provisions of this Article.

**STEP ONE**: A grievance shall first be taken up between the Union's designated representative and a designated representative of the Employer.

**STEP TWO**: In the event that the grievance cannot be resolved within six (6) working days of the Step One conference, it shall be reduced to writing and referred for conference and resolution by designated officials of the Union and/or the Contractor Group or the Employer as the case may be.

**STEP THREE**: In the event the grievance cannot be resolve by the Step Two conference the aforementioned written grievance shall be submitted immediately to the Joint Grievance Committee created in the Article.

The Union and Contractor Group shall together create a Joint Grievance Committee to resolve grievances arising under this Agreement. This Committee shall consist of an equal number of members representing Employers and the Union. The Union or Contractor Group may appoint alternate members.

The Joint Committee has formulated rules of procedure to govern the conduct of its meeting and such rules for processing of grievances are not in conflict with this Agreement.

The Joint Committee shall have the power to resolve all grievances before it and shall have the right to examine all records of the Employers and employees as is reasonably necessary to resolve the grievance. The Joint Grievance Committee shall have the authority to determine and assess remedies for violations of this Agreement; including but not limited to an award of back pay and equivalent benefits to the Local 150 Assistance Fund.

Where the Joint Grievance Committee, by majority vote, resolves a grievance, no appeal may be taken and such resolution shall be final and binding on all parties and individuals bound by this Agreement.

If the Joint Grievance Committee is unable to resolve a grievance by majority vote, the grievance may be submitted within thirty (30) days to a neutral arbitrator. If the Union and the Contractor Group cannot agree on an arbitrator, then an arbitrator shall be selected in accordance with the rules and procedures of the American

## ARTICLE XV
### EFFECTIVE TERMINATION DATES AND NOTIFICATION

The Agreement shall be effective as of June 1, 2025 and shall continue in full force and effect until May 31, 2028. The Parties shall give notice at least sixty (60) days prior to May 31, 2028 of the desire to negotiate a new Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement this ____4____ day of ___JUNE___, 2025.

**MICHIANA INDEPENDENT BUILDING AGREEMENT**
c/o Premium Concrete Services, Inc.
712 Richmond Street
Elkhart, Indiana 46516
Office: (574) 264-0196 Ext#14
Cell: (574) 612-5300
Fax: (574) 266-5392
max@premiumconcreteonline.com
http://www.premiumconcreteonline.com/

_____
Max Yeakey, Owner

**INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 150 AFL-CIO**

_____
James M Sweeney, President/Business Manager

_____
Michael R Kresge, Recording/Corr Secretary

_____
David A Fagan, Financial Secretary

_____
James Gardner, Business Representative

_____
Nicholas Cline, Business Representative

[Stamp: REC.-CORRESPONDING RECEIVED JUN 16 2025 SECRETARY]